# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WALTER HILLIARD,** | : | |
| **Plaintiff** | : | |
| | : | **NO. 1:CV-07-1216** |
| **v.** | : | |
| | : | |
| **GOODWILL INDUSTRIES,** | : | **CIVIL ACTION – LAW** |
| **KEYSTONE AREA** | : | |
| **Defendant** | : | |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS

**AND NOW COMES** Defendant Goodwill Industries Keystone Area

("Goodwill"), by and through its attorneys, McNees Wallace & Nurick LLC, and

files the following Statement of Material Facts in Support of Motion for Summary

Judgment in the claims brought against it by Plaintiff Walter Hilliard ("Hilliard").

## I.  UNDISPUTED MATERIAL FACTS [1]

1.    On March 16, 2006, Goodwill's Senior Vice President Human

Resources, Leslie Fleig ("Fleig"), received a sexual harassment complaint from

---

[1] On September 17, 2007, Goodwill served its First Request for Admissions Addressed to Plaintiff Walter Hilliard, which specifically emphasized to Plaintiff that he was required to serve verified answers to Goodwill's counsel in writing within 30 days.  A copy of Goodwill's First Request for Admissions is attached as Exhibit A.  As such, Plaintiff's verified responses were due on October 17, 2007.  While attempting to prepare for Plaintiff's deposition, Goodwill's counsel contacted Plaintiff by telephone on no less than three separate occasions specifically requesting his responses to Defendant's First Request for Admissions.  To date, Plaintiff still has not provided a response to Defendant's First Request for Admissions Addressed to Plaintiff Walter Hilliard.  As such, Defendant's Request for Admissions are deemed admitted pursuant to Federal Rules of Civil Procedure 36(a).  Goodwill was required to rely on Plaintiff's admissions in preparing for his deposition and this Motion for Summary Judgment.

Tashya Johnson ("Johnson").  A copy of Johnson's complaint is attached as Exhibit B.

2.      In her complaint, Johnson alleged that she had a romantic relationship with her supervisor, Walt Hilliard. (Ex. B).

3.      Hilliard admits that he had a sexual relationship with Johnson. (Ex. A, No. 1).

4.      Johnson further alleged that she attempted to end her relationship with Hilliard in December 2004 after he became "physical and verbal."  (Ex. B).

5.      After Johnson ended the relationship, Hilliard threatened Johnson's employment, called her derogatory names at work, and gave her impossible tasks to perform only to call her insubordinate when she unable to complete them to his satisfaction.  (Ex. B).

6.      Hilliard admits that after Johnson ended the relationship, he threatened her employment. (Ex. A, No. 9).

7.      Hilliard admits that after Johnson ended the relationship, he referred to her in derogatory terms while at work. (Ex. A, No. 12).

8.      Hilliard admits that after Johnson ended the relationship, he gave her impossible tasks to perform only to call her insubordinate when she unable to do the tasks. (Ex. A, No. 11).

9.      On March 17, 2006, Fleig sent Hilliard a letter notifying him that she was investigating a sexual harassment complaint filed by Johnson.  In that letter, Fleig asked Hilliard to submit his version of the events with supporting information.  A copy of Fleig's letter to Hilliard is attached as Exhibit C.

10.     Fleig conducted a thorough investigation of Johnson's complaint. Fleig spoke with Hilliard as part of this investigation.  Fleig completed her investigation of Johnson's complaint on or about March 28, 2006.  (Ex. D, Hilliard Dep. 121).

11.     On March 23, 2006, Fleig received a witness statement from Store Manager, Mona Gibson ("Gibson").  A copy of Gibson's statement is attached as Exhibit E.

12.     In her statement, Gibson confirmed Johnson's allegations.  Gibson averred that she overheard Hilliard call Johnson derogatory names and threaten her employment with Goodwill.  (Ex. E).

13.     Hilliard admits Gibson heard him threaten to terminate Ms. Johnson. (Ex. A, No. 14).

14.     Johnson's allegations were also confirmed by Hilliard's friend and coworker, Robin Smith.  A copy of the Affidavit of Robin Smith is attached as Exhibit F.

15.     Goodwill had a written policy prohibiting discrimination and sexual harassment.  A copy of Goodwill's Equal Employment and No Harassment Policy is attached as Exhibit G.

16.     As a member of management, Hilliard was familiar with Goodwill's policies and procedures.  (Ex. D, Hilliard Dep. 133).  Copies of Hilliard's Acknowledgment of Receipt of Goodwill's Handbook and his signed statement that he received and reviewed Goodwill's harassment policy are attached as Exhibit H.

17.     On March 29, 2006, Hilliard was terminated for violating Goodwill's Equal Employment and No Harassment Policy.  A copy of Hilliard's termination letter is attached as Exhibit I.

18.     Fleig gave Hilliard a salary increase "just about every year."  (Ex. D, Hilliard's Dep. 52, 86-87).

19.     In 1999, Fleig promoted Hilliard to Vocational Counselor.  (Ex. D, Hilliard's Dep. 55, 86-87).

20.     In 2004, Fleig promoted Hilliard to Manager of Vocational Services and gave him a $1000 increase in salary. (Ex. D, Hilliard's Dep. 60, 86-87).

21.     When Hilliard complained about the size of this salary increase, Fleig resolved Hilliard's complaint by increasing his annual salary by an additional $3,000.  (Ex. D, Hilliard's Dep. 63).

22.     In October 2006, Hilliard applied for promotion.  Ellen Kyzer ("Kyzer"), the Vice President of Workforce Development, told Hilliard that he did not have the necessary qualifications.  Hilliard complained to Fleig, and Fleig met with Kyzer.  Kyzer agreed to interview Hilliard.  Hilliard chose not to interview for the position.  (Ex. D, Hilliard's Dep. 82-83, 91).

23.     Hilliard cannot identify a single white employee who Goodwill treated more favorably regarding personal complaints.  (Ex. D, Hilliard's Dep. 110).

24.     Ursula Singleton, who Hilliard identified as his witness, was unable to corroborate or support any of his claims.  A copy of the Affidavit of Ursula Singleton is attached as Exhibit J.

25.     Hilliard admits that he was terminated for a "legitimate" reason.  (Ex. D, Hilliard's Dep. 167).

26.     Hilliard admits that he did not raise the issue of alleged discrimination until after he became aware of Johnson's harassment complaint.  (Ex. A, No. 24).

27.     Hilliard admits that no Goodwill employee ever discriminated against him because of his race, sex, or age.  (Ex. A, Nos. 30, 31, 32).

28.     Hilliard admits that no Goodwill employee ever retaliated against him for any unlawful reason.  (Ex. A, No. 33).

29.     Hilliard admits that his discrimination claims have no merit.  (Ex. A, No. 35).


Respectfully submitted,

McNEES WALLACE & NURICK LLC


By____/s/ Richard L. Etter_____
        Schaun D. Henry
        I.D. No. 80597
        Richard L. Etter
        I. D. No. 92835
        100 Pine Street
        P. O. Box 1166
        Harrisburg, PA  17108
        (717) 237-5367

Attorneys for Goodwill Industries
Keystone Area

Dated:  May 16, 2008

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this date a true and correct copy of

the foregoing Defendant's Statement of Material Facts in Support of Its Motion for

Summary Judgment was served by First Class Mail upon the following:


        Walter Hilliard
        3733 Tudor Drive
        Harrisburg, PA 17109
        ***Pro Se Plaintiff***



              /s/ Richard L. Etter
              Richard L. Etter

Dated:  May 16, 2008